### In re KENTUCKY ELKHORN COAL CORPORATION.

District Court, E. D. Kentucky, at Covington. October 7, 1926.

No. 1770.

1. **Mines and minerals ⬅66—Lessor of mining property held not entitled to cancellation for appointment of receiver for lessee, where receivership was encouraged until bankruptcy proceedings.**

Where lessor of mining property, under lease containing a clause authorizing forfeiture of lease at lessor's election in case of continuance of receiver in charge of lessee's property for more than 60 days, did not object to receivership of lessee, but rather approved and encouraged it until involuntary bankruptcy proceedings were instituted, more than 60 days after receivership, and then gave notice of forfeiture only for purpose of frightening creditors into abandoning the bankruptcy proceedings, it was not entitled to cancellation of lease.

2. **Mines and minerals ⬅66—Acceptance of royalties from receiver after expiration of period to declare forfeiture was treatment of lease as still in force.**

Where lessor of mining property, under lease authorizing forfeiture in case of continuance of receiver in charge of lessee's property for more than 60 days, accepted royalties from receiver earned after expiration of such 60-day period, the acceptance thereof was a treat-

ment of the lease as still in force, notwithstanding the cause of forfeiture in the receivership.

3. **Mines and minerals ⬅66—Lessor of mining property, giving notice of cancellation for lessee's receivership after expiration of period fixed by lease, should apply for order for delivery of property.**

Where lessor of mining property, under lease authorizing forfeiture in case of receivership for lessee for more than 60 days, permitted receiver to operate property for longer than such period, notice of cancellation after institution of bankruptcy proceedings by other creditors, in order to have any effect, should have been followed by application to court to order receiver to turn property over to lessor.

In Bankruptcy. In the matter of the bankruptcy of the Kentucky Elkhorn Coal Corporation. On petition by the trustee in bankruptcy for review of an order of the referee, adjudging that the lease under which the bankrupt held and operated its leasehold had been canceled and did not pass to the trustee as an asset. Order of the referee reversed.

Judgment affirmed, 19 F.(2d) 267.

J. J. Moore, of Pikeville, Ky., for appellant.

Stratton & Stephenson, of Pikeville, Ky., for the bankrupt.

ANDREW M. J. COCHRAN, District Judge. This cause is before me on petition for review, filed by the trustee, complaining of an order of the referee, adjudging that the lease under which the bankrupt held and operated its leasehold, made to it by the Big Sandy Company, had been canceled, as hereinafter set forth, and that therefore this leasehold did not pass to him as an asset of the estate. The twenty-first article of this lease contained this clause: "And the continuance of a receiver in charge of the lessee's property for a period of sixty (60) days shall be deemed a cause of forfeiture of this lease at the election of the lessor." The claim of the Big Sandy Company, the lessor, that it was entitled to a cancellation of the lease, was based upon this clause and certain action taken by it thereunder.

How that action came about and what it was should now be set forth. In October, 1925, a petition in equity was filed in the Pike circuit court by a creditor of the bankrupt, alleging its indebtedness to plaintiff and that it was insolvent, and praying that a receiver be appointed to take charge of its property for the benefit of all its creditors. On October 15, 1925, an order was made therein appointing a receiver, as prayed for,

and the appointment was made and the receiver placed in charge of such property on the ground of insolvency, which constituted an act of bankruptcy. On October 22, 1925, the bankrupt's lessor, the Big Sandy Company, filed a petition in equity in that court against the bankrupt, alleging indebtedness on its part to it on account of royalties, claiming a lien to secure same on its leasehold and other property, and seeking to have same sold to pay its indebtedness. On the following day, October 23, the general manager of the Big Sandy Company wrote a letter to the president of the bankrupt, informing him of the filing of the suit and saying:

"I am merely writing this letter to assure you it is not our intention to embarrass you at all, so long as you have an opportunity to work the matter out. The petition is filed simply to protect our claim for back royalty due. In a way this may prove to be a benefit to you, as other creditors will note our prior lien against your property, and may not feel it of sufficient advantage to them to warrant the filing of their claims."

This letter indicates, not merely an acquiescence in the receivership, but a willingness to help it along. It contemplates that through the receivership the bankrupt may be able "to work the matter out," and that the filing of the suit will be a "benefit" to it in deterring other creditors from filing their claims. The meaning would seem to have been that possibly, at least, through the receivership, the bankrupt would be able to straighten out its affairs and get on its feet again, and that the Big Sandy Company would not interfere with this being done. It was as much as to say that it would not claim a forfeiture on account of the receivership. Possibly it was also had in mind that the bringing of the suit might ward off the bringing of proceedings in bankruptcy. The receiver was partner of the Big Sandy Company's counsel, who had charge of bringing the suit, and, according to the copy of the record thereof filed herein, the firm's name was subscribed to its petition. On November 18, 1925, the two suits—i. e., the receivership suit and that of the Big Sandy Company—were consolidated by agreement; and on November 23, 1925, that company was granted leave to sue the receiver, which it at once did. In these ways the Big Sandy Company continued its manifestations of a favorable attitude to the receivership.

At the time of the appointment of the receiver, the bankrupt's mines were in operation, and after his appointment he continued their operation. Under the terms of the lease the royalties for each month were payable within 30 days after the 25th of the succeeding month. The royalties due for the month of October, 1925, amounted to $633.69. This included royalties for coal mined during that month by the bankrupt, before the appointment of the receiver, as well as for coal mined by the receiver after such appointment. The receiver paid them November 27, 1925. The royalties due for the month of November, 1925, amounted to $583.99. They were paid by the receiver December 28, 1925. Those due for the month of December, 1925, amounted to $646.26. They were paid by the receiver January 28, 1926. Up to this time everything was running along smoothly. The Big Sandy Company's general manager testified that "under the receivership we allowed them to operate until early in February." It would seem that about this time conferences were had by such general manager with the receiver and the representative of one of the Pikeville banks, a large creditor, looking to the organization of a company locally, which I take to mean at Pikeville, which would be satisfactory to the Big Sandy Company, to take over the property, eliminating the bankrupt's president, and pay the creditors something. The bank's representative did not take much to this.

Such was the condition of things when a bombshell was exploded in the midst of the contented parties. Shortly before February 3, 1926, just when not appearing, this involuntary proceeding in bankruptcy was filed in this court. The act of bankruptcy charged was the appointment of the receiver, because of insolvency, within four months theretofore. I do not have the papers before me, but I take such to have been the case. Then, on that date, for the first time, more than a month and a half after the receivership had continued for 60 days, resort was had to the clause in the twenty-first article of the lease relating to the effect of such a continuance. Thereupon the Big Sandy Company served a notice in writing on the receiver in which it said: "In accordance with the following section of article 21 of the lease from the Big Sandy Company to Kentucky Elkhorn Coal Corporation, the Big Sandy Company herewith elects to cancel this lease, effective to-day." A copy of this notice was sent to the bankrupt and the referee in bankruptcy. It is this action, in connection with this clause in the lease, on which reliance is had to sustain the cancellation claimed and adjudged, and this is how it came about.

It was hardly more than a scarecrow. We have seen that the filing of the suit to enforce the lien for royalties was looked upon as somewhat of a scarecrow. This was a great big one, and it was effective. It would seem that at this time no process on .the involuntary petition in bankruptcy had been served. No steps to prosecute the proceeding were taken until a considerable time thereafter, and none would ever have been taken if it had not been for what subsequently happened. The Big Sandy Company and the receiver had an understanding that the latter would continue in charge of the property and operate the mines, and pay to the company the royalties as theretofore, but would get out whenever it called on him to do so. The giving of the notice of cancellation and such agreement were not reported to the court, and it took no action in regard thereto. The Big Sandy Company had no intention of ever calling on the receiver to yield possession in pursuance to its notice, except in the contingency that the bankruptcy proceeding should bob up again, which it did not expect it to do. Its intention and purpose was that the receivership should continue the same as before, and that the property of the bankrupt should be sold in that suit as its property and its affairs wound up therein.

So it was that the receiver did continue to operate the mines until July 3, 1926. The royalties for the month of January, 1926, which had not been paid at the time of the giving of the notice of cancellation, amounted to $634.46, and they were paid by the receiver on March 1, 1926; those for the month of February, 1926, amounting to the sum of $567.86, were paid by the receiver March 18, 1926; those for the month of March, amounted to $579, and were paid by the receiver in April, 1926; those for the month of April, 1926, amounted to $237.56, and were paid by the receiver May 4, 1926; and those for the month of May, 1926, amounted to $204.81, and were paid by the receiver June 17, 1926.

The further prosecution of the bankruptcy proceeding came about in this way: On April 24, 1926, an answer had been tendered by the plaintiff in the receivership suit, contesting a portion of the Big Sandy Company's claim for unpaid royalties set up in its petition in the consolidated suits, but conceding a liability to the extent of $1,666.92. On that date a personal judgment for that amount was rendered in favor of the Big Sandy Company against the bankrupt and the receiver. It was further adjudged that it had a lien upon all the improvements, equipment, and appliances and personal property on the leasehold acquired by the bankrupt from that company, and also on that leasehold, to secure the amount so adjudged to it, and that the receiver sell the personal property and the premises, which latter I take included the leasehold and all the improvements, equipment, and appliances located thereon, which did not come under the head of personal property, to satisfy that sum.

Thereafter the receiver advertised for sale only the personal property. The sale thereof, apart from the premises, could not but affect the salable value of the premises. The sale was advertised for Monday, June 7, 1926. This proposed sale aroused the creditors of the bankrupt. They caused service of summons to be had on the involuntary petition in bankruptcy on June 7, 1926, the day of sale; but the proposed sale was abandoned Saturday, June 5, 1926, after a conference amongst the representatives of the creditors, the Big Sandy Company, and the receiver. It is claimed on behalf of the Big Sandy Company that it was then agreed that judgment for a sale of the entire property, except the leasehold, to be offered separately and then as a whole, should be entered on the first and second day of the next regular civil term of the Pike circuit court, and that the creditors were not to push the bankruptcy proceedings. Whether such an agreement was then entered into or not, the Big Sandy Company on that day—i. e., Saturday, June 5, 1926—notified the creditors in writing that it would postpone the sale of the personal property on Monday, the 7th, with the agreement that such a judgment should be so entered. Concerning the sale of the leasehold it had this to say: "For the reasons explained to you, the Big Sandy Company would not want its leasehold sold, because a very undesirable purchaser might bid it in, and they naturally want to have a voice in· saying who shall be the lessee."

[1] This course of procedure put the creditors at the mercy of the Big Sandy Company, and it was natural that they would not stand for it. If they did agree to it on Saturday, reflection over Sunday caused them to change their minds. Thereafter adjudication and reference were had in the bankruptcy proceeding, and a trustee was elected July 3, 1926, to whom the receiver turned over the property. On July 19, 1926, the Big Sandy Company filed its petition, seeking to have it adjudged that the lease had been canceled, and it was entitled to

have the leasehold turned over to it. It was upon this petition that the order complained of was made. This recitation of the facts of this case is sufficient to make out that the Big Sandy Company is not entitled to the relief it seeks.

[2, 3] The Big Sandy Company did not merely not object to the receivership. It countenanced, approved, and encouraged it. It said in so many words to the receiver that he should have an opportunity to work the matter out, that it would not embarrass him in so doing, and that the bringing of its suit might help him along. It was patting the receiver on the back until the institution of the bankruptcy proceedings. It was then in no position to take advantage of what it had theretofore abetted. Even apart therefrom, it was not then entitled to claim a forfeiture. The 60 days was up December 16, 1925. The Big Sandy Company was then put to its election to claim a forfeiture. This it did not do for a month and a half thereafter; and before it so did it had elected to treat the lease as not forfeited. The payment to it of $646.26 on January 28, 1926, on account of the royalties for December, included royalties earned after the 16th and from that date to the end of the month. The acceptance thereof was a treatment of the lease as still in force, notwithstanding the cause of forfeiture in the receivership. Its purpose and intention in giving the notice of cancellation was not with the view of depriving the receiver of the leasehold, but in order to frighten the creditors into abandoning the bankruptcy proceedings.

The giving of the notice, therefore, was not in good faith. Besides, the giving of the notice was not followed up. By its consent the receiver was permitted to remain in charge and operate the mines, paying it its royalties. It will not do to say that the receiver agreed to surrender it when called upon. The receiver had no authority to make such an agreement, and the rights of the parties were not affected thereby. If the notice was to be given any value, it should have been followed up by an application to the court to order the receiver to turn the property over to it. Instead of making such an application, it obtained a judgment of the court that the lease was still in force. This was the effect of the adjudication that it had a lien on the leasehold for its unpaid royalties and the direction that it be sold to pay them. Apart from any other consideration, this judgment is sufficient of itself to do away with the right of the Big Sandy Company to insist on a forfeiture. The ef-

fect of adjudging a forfeiture is to bring about a sale of the personal property and equipment for no more than $5,000, when, if sold with the leasehold, according to the uncontradicted testimony, it is likely to bring as much as $15,000 or $20,000, and possibly $30,000.

The order of the referee is reversed.